UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KALA MINKLEY,

          Plaintiff,

    v.

EUREKA CITY SCHOOLS, et al.,

          Defendants.

Case No. 17-cv-3241-PJH

**ORDER GRANTING MOTION TO DISMISS IN PART AND DENYING IT IN PART**

      Defendants' motion to dismiss certain claims asserted against them in the first amended complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) came on for hearing before this court on August 16, 2017. Plaintiff Kala Minkley appeared by her counsel Peder J. Thoreen and Jennifer W. Bezoza. Defendants appeared by their counsel Nicholas R. Kloeppel. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion in part and DENIES it in part as follows.

## BACKGROUND

      This is a case arising out of a dispute between plaintiff Kala Minkley and her former employer, the Eureka City Schools Board of Education, which resulted in her termination. Named as defendants are the Eureka City Schools; the Eureka City Schools Board of Education ("the District" or "the Board"); District Superintendent Fred Van Vleck ("Van Vleck"); Director of Student Services Laurie Alexander ("Alexander"); and the five members of the Board – Lisa Ollivier ("Ollivier"), Wendy Davis ("Davis"), Mike Duncan ("Duncan"), Susan Johnson ("Johnson"), and Fran Taplin ("Taplin"). The individual

1    defendants are sued in their individual and official capacities.

2         Plaintiff was a special education teacher who began her employment with the

3    District at the start of the 2015-2016 school year, at Grant Elementary School.  FAC ¶¶ 2,

4    17.  During that time period, she was classified by the District as a "probationary"

5    teacher, pursuant to Cal. Educ. Code § 44915.  FAC ¶ 2.  Plaintiff alleges that her job

6    performance was exemplary.  FAC ¶ 18.

7         Plaintiff asserts that starting in October 2015, and continuing through May 2016,

8    she was attacked (and injured) by two of her students "multiple times a week for at least

9    thirty to ninety minutes at a time," with the most severe assaults occurring on October 16,

10   2015, and January 26, February 12, April 5, April 7, April 27, May 10, and May 23, 2016.

11   FAC ¶¶ 19-21.  She alleges that "[d]uring these attacks, the students hit, punched,

12   shoved, kicked, bit, scratched, pulled her hair, and head-butted her [and that they] also

13   flipped over desks, destroyed school property, threw heavy objects (such as backpacks,

14   chairs, and rocks) at [plaintiff] and made specific threats to her life."  FAC ¶ 20.  She

15   claims that these students also attacked/ threatened other students.  FAC ¶ 24.

16        Plaintiff complained to District administrators as well as to school psychologists

17   and the Eureka Teachers Association ("ETA") that her classroom was not an appropriate

18   placement for the two students who were engaging in violent behavior, whom she

19   considered to be in need of greater support and services.  See FAC ¶¶ 22, 26-65.  She

20   asserts that she filed "at least seventeen 'Reports Regarding Attack, Assault, or Physical

21   Threat of a Teacher or Paraprofessional,'" that she "continually told her supervisor, [Grant

22   School] Principal Martin Goddi, about these students' harmful behavior[,]" and that she

23   eventually began reporting the attacks to the Eureka Police Department.  FAC ¶ 22.

24        In early December 2015, ETA President David Dement wrote to the Board on

25   behalf of plaintiff and other bargaining unit members explaining that escalating violence

26   at Grant School was resulting in classroom and school disruption, lockdowns, physical

27   and verbal assault of students and teachers, and loss of teaching and learning time.  FAC

28   ¶ 30.  Plaintiff claims that he also presented this information to Van Vleck at a meeting on

2

December 8, 2015. FAC ¶ 30. At the December 10, 2015, Board Meeting, Mr. Dement addressed the Board's questions and concerns, and Alexander allegedly assured the Board that the District was addressing those issues and the students' needs. FAC ¶ 30.

Nevertheless, plaintiff asserts, the violence continued to escalate in January 2016. FAC ¶ 31. Plaintiff alleges that Mr. Dement asked elementary teachers to communicate directly with the Board regarding the unsafe teaching and learning conditions in their schools, and that he compiled the teachers' responses without their names in one document, which he sent to the Board on January 13, 2016. FAC ¶ 31. This document included two responses from plaintiff. FAC ¶ 32.

In the first response, plaintiff noted the absence of a plan for safety at the school, and the lack of a Crisis Prevention Intervention ("CPI") team, which she had repeatedly requested be organized. She stated that "this makes it very dangerous for me and the other adults at my school to come to work" and that "[m]y students are in serious danger every day because my school has no CPI team[,]" adding that "[a]ll of our students deserve a free and appropriate public education" and that "[t]he students who are dealing with dangerous behavior problems need more services." FAC ¶ 32. In the second response, which was also sent to Principal Goddi, Alexander, and School Psychologist Jessie Burns, plaintiff detailed a recent incident with one of the two students, and again emphasized the need for a functioning CPI team on the school campus. FAC ¶ 32.

Plaintiff contends that Van Vleck wrote to Mr. Dement, discouraging him from presenting the teachers' complaints to the Board at the January 14, 2016, meeting, stating that such a presentation at the public Board meeting would "create more negativity about why parent [sic] shouldn't send their children to Eureka City Schools." FAC ¶ 33. The Board did allegedly discuss the safety issues at the January 14, 2016 meeting, but plaintiff claims that Van Vleck, Alexander, and Principal Goddi again assured the Board that the District was addressing the safety and special education issues. FAC ¶ 34.

Plaintiff asserts that she also complained that the District was violating special

3

education and non-discrimination law with respect to the maintenance of individualized educational program ("IEP") files, failure to hold timely manifestation determination review meetings, lack of effective Positive Behavior Interventions and Supports Protocols, and failure to forward behavior emergency forms.  See FAC ¶¶ 39-41, 61.

In February 2016, Ms. Minkley reported to the Humboldt County Office of Education, which administers the Beginning Teacher Support and Assessment ("BTSA") induction program, that the District was not maintaining a safe environment and was not appropriately supporting her and her students with disabilities. FAC ¶ 37.  Pat Self, the County Coordinator for the BTSA program, promised to reach out to the District on Ms. Minkley's behalf.  FAC ¶ 37.

According to plaintiff, the placement of one of the two troubled students was changed from her class to a conference room in the school on April 17, 2016.  FAC ¶ 51. On April 20, 2016, Alexander offered plaintiff a preschool teaching position in the Autism Classroom at Winzler's Children's Center, which she accepted.  FAC ¶ 53.

Approximately a week later, on April 27, 2016, after plaintiff returned from a visit to the Emergency Room where she had been treated for an injury caused one of the students, she urged Principal Goddi to place the student in an interim alternative educational setting for 45 days, which is permitted under special education law (even if his conduct was a manifestation of his disability) because of the severity of his attacks. FAC ¶ 54.  She claims that Principal Goddi never responded to her request.  FAC ¶ 54.

On April 28, 2016, plaintiff wrote to Principal Goddi and Ms. Burns stating her belief that the remaining student needed "a more restrictive placement and that home and hospital instruction would be most appropriate[,]" and advising that it was not safe for this student to be in her classroom, and that "he is not accessing his education here . . . ." FAC ¶ 55.  At this student's April 2016 IEP meeting, she again voiced her concern that the student's placement was inappropriate, but alleges that she had been warned by Alexander (through Ms. Burns) not to do so.  FAC ¶ 56.  Plaintiff claims that the District did not adequately address her concerns expressed in these communications.  FAC ¶ 57.

Plaintiff asserts that on May 19, 2016, on the advice of Ms. Burns, she sent an email to Mindy Fattig, Director of the Humboldt-Del Norte SELPA, stating, "[M]y student is still not accessing his education.  We are not able to assess him on goals at this point, but I have no doubt that he is regressing in all areas.  Because of this, it seems to me that he is inappropriately placed . . . This boy is not getting the education he is owed.  I hope you can help because I have exhausted all other options . . . ."  FAC ¶ 60.  Ms. Fattig allegedly informed plaintiff that she would discuss the situation with Van Vleck. FAC ¶ 60.

Plaintiff also complained to Ms. Fattig that the District had not forwarded emergency behavior forms that she had filled out during the school year to SELPA, "as it was required to do by state regulations, as indicated on the form."  FAC ¶ 61.  Plaintiff claims that she had previously expressed her concern to Alexander that the District had not been forwarding these forms to SELPA as required.  FAC ¶ 61.

Plaintiff alleges that on May 24, 2016, one of her students was involved in "a credible threat . . . to kill himself and the school's custodian by slitting the custodian's throat and watching him bleed to death," and that she again complained to "District administrators" in a series of emails on behalf of herself and her students.  FAC ¶ 62. Plaintiff asserts that when the District failed to provide assurance that the dangerous student would not be returned to her class the following day, she wrote a letter to the parents of her other students on her home computer, advising them that she was not being supported in her work, and warning them of the danger posed by the violent student.  FAC ¶ 62.  The body of that letter stated,

> [W]hile your child is here at school she/he is being exposed to frequent and prolonged bouts of violence that require the class to hide behind bookshelves and evacuate the classroom. There have been recent detailed threats to the lives of students here and the adults who work here. The team here at Grant has been doing its best to provide supports so that this will stop. Our efforts have not been successful . . . I am not being supported in trying to keep your child safe at this time, and I have no doubt that the violence will continue.

FAC ¶ 63.  Plaintiff added that if the parents had any questions or comments, they should

5

call the District office and ask to speak to the special education department. <u>See</u> Defs'

RJN, Exh. B. When plaintiff came to school on May 25, 2016, she asked one of her

classroom aides to place this letter to parents in her students' backpacks, left school for

the day, and also took the following day off as a sick day. FAC ¶ 64.

Plaintiff alleges that Van Vleck told an ETA staff representative that he intended to

seek legal advice and then was "going to do whatever [he] can" to discipline plaintiff

immediately following the series of May 24, 2016, complaints. FAC ¶ 66. Plaintiff was

placed on administrative leave on May 26, 2016, pending the results of an investigation

regarding the letter she had sent to parents and the issues raised on May 24, 2016. FAC

¶ 67. Plaintiff asserts that on the same day, the second of the two subject students was

moved out of the SDC classroom for the rest of the school year. FAC ¶ 69.

Plaintiff asserts that on or about June 23, 2016, the Board voted to "non-reelect"

her (terminate her employment). FAC ¶ 70. She claims that during her meeting with Van

Vleck when she was informed of this decision, Van Vleck told her: "If this gets to the

media, it's going to be very bad for your career." FAC ¶ 71.

On July 28, 2016, plaintiff (through counsel) submitted a claim pursuant to the

California Tort Claims Act ("CTCA") to the District. FAC ¶ 75; <u>see also</u> Defs' RJN Exh. B.

On September 14, 2016, the District's claims administrator denied the claim, and advised

plaintiff that she had six months to file any lawsuit asserting state law claims against the

District. FAC ¶ 75.

Plaintiff filed the original complaint in this action in the Humboldt County Superior

Court on March 10, 2017. Named as defendants were the Eureka City Schools, the

District, Van Vleck, Ollivier, Davis, Duncan, Johnson, and Taplin. The original complaint

asserted four causes of action – a First Amendment free speech claim under 42 U.S.C.

§ 1983, against the individual defendants for damages, and against all defendants for

injunctive relief; a free speech claim under Article I, Sec. 2 of the California Constitution,

against all defendants; a claim of wrongful termination in violation of public policy, against

all defendants; and a claim under the Bane Act, Cal. Civ. Code § 52.1, against Van Vleck

1    and the District.

2        On May 5, 2017, plaintiff filed a significantly longer FAC, with an expanded

3    "Factual Allegations" section, asserting 10 causes of action and adding Alexander as a

4    defendant.  The FAC alleges (1) a claim of retaliation under the Americans With

5    Disabilities Act ("ADA"), 42 U.S.C. § 12203, against all defendants; (2) a claim of

6    retaliation under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, against all defendants;

7    (3) a claim under Cal. Govt. Code § 11135, against all defendants; (4) a First Amendment

8    claim of retaliation and violation of free speech and associational rights under 42 U.S.C.

9    § 1983, against all defendants; (5) a free speech claim under Article 1, Sec. 2 of the

10   California Constitution, against all defendants; (6) a claim of retaliation for whistleblowing

11   under Cal. Labor Code § 1102.5, against all defendants; (7) a claim of retaliation under

12   Cal. Educ. Code § 44113(a), against Van Vleck and Alexander, and under § 44114(c),

13   against all defendants; (8) a claim of wrongful termination in violation of public policy,

14   against all defendants; (9) a First Amendment claim of "prior restraint" under § 1983,

15   against Eureka City Schools and Van Vleck; and (10) a claim under the Bain Act, Cal.

16   Civil Code § 52.1, against Eureka City Schools and Van Vleck.

17       Defendants removed the case to this court on June 6, 2017.  They now seek an

18   order dismissing all causes of action with the exception of the sixth and a portion of the

19   seventh.  They also seek an order dismissing Alexander on the basis that the claims

20   against her are time-barred.

21                              **DISCUSSION**

22   A.    Legal Standard

23       A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

24   alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

25   Under the minimal notice pleading requirements of Federal Rule of Civil Procedure 8(a),

26   a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a

27   cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal

28   theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

1   While the court is to accept as true all the factual allegations in the complaint,

2   legally conclusory statements, not supported by actual factual allegations, need not be

3   accepted. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009); <u>see also</u> <u>In re Gilead Scis.</u>

4   <u>Secs. Litig.</u>, 536 F.3d 1049, 1055 (9th Cir. 2008). The complaint must proffer sufficient

5   facts to state a claim for relief that is plausible on its face. <u>Bell Atl. Corp. v. Twombly</u>, 550

6   U.S. 544, 555, 558-59 (2007). A claim has facial plausibility when the plaintiff pleads

7   facts that allow the court to draw the reasonable inference that the defendant is liable for

8   the misconduct alleged. <u>Iqbal</u>, 556 U.S. at 678. Where dismissal is warranted, it is

9   generally without prejudice, unless it is clear the complaint cannot be saved by any

10  amendment. <u>Sparling v. Daou</u>, 411 F.3d 1006, 1013 (9th Cir. 2005).

11  Review is generally limited to the contents of the complaint, although the court can

12  also consider a document on which the complaint relies if the document is central to the

13  claims asserted in the complaint, and no party questions the authenticity of the

14  document. <u>See</u> <u>Sanders v. Brown</u>, 504 F.3d 903, 910 (9th Cir. 2007). That is, the court

15  may consider matters that are properly the subject of judicial notice, <u>Knievel v. ESPN</u>,

16  393 F.3d 1068, 1076 (9th Cir. 2005); <u>Lee v. City of L.A.</u>, 250 F.3d 668, 688-89 (9th Cir.

17  2001), and may also consider exhibits attached to the complaint, <u>see</u> <u>Hal Roach Studios,</u>

18  <u>Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and

19  documents referenced extensively in the complaint and documents that form the basis of

20  a the plaintiff's claims, <u>see</u> <u>No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am.</u>

21  <u>W. Holding Corp.</u>, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

22  B.   Defendants' Motion

23  Defendants make 13 main arguments in support of their motion.

24  1.   Dismissal of ADA and § 504 claims against individual defendants

25  The first and second causes of action for retaliation in violation of the ADA and

26  § 504 of the Rehabilitation Act are asserted against "all defendants." The ADA prohibits

27  disability discrimination in three areas: employment, public services, and public

28  accommodations. Subchapter I of the ADA ("Title I"), which prohibits discrimination on

account of disability in employment, covers the same employers and provides the same remedies contained in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(b). See 42 U.S.C. §§ 12111-12117. Subchapter II ("Title II") bars discrimination by any state or local government entity (that is, discrimination in public services) and affords the remedies outlined in Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. See 42 U.S.C. §§ 12131-12165. Subchapter III ("Title III") prohibits discrimination by public accommodations and incorporates the remedies of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-3(a). See 42 U.S.C. §§ 12181-12189. In addition, Subchapter IV sets forth various miscellaneous provisions, see 42 U.S.C. §§ 12201-12213, one of which is the anti-retaliation provision, 42 U.S.C. § 12203.

Section 504 of the Rehabilitation Act prohibits discrimination on the basis of disability under any program or activity receiving Federal financial assistance. See 29 U.S .C. § 794(a). The term "program or activity" as used in this section means "all the operations of a local educational agency." 29 U.S.C. § 794(b)(2)(B). There is nothing in the text of § 504 that specifically addresses retaliation, but it is generally accepted that what is forbidden under § 504 includes retaliation for exercise of protected rights. Courts have held that there is no significant difference in the analysis of rights and obligations created by the ADA and § 504 of the Rehabilitation Act. See Vinson v. Thomas, 288 F.3d 1145, 1152 n. 7 (9th Cir. 2002); see also McGary v. City of Portland, 386 F.3d 1259, 1269 n. 7 (9th Cir. 2004).

There is no individual liability for damages under the ADA or § 504. See, e.g., Eason v. Clark Cnty. Sch. Dist., 303 F.3d 1137, 1144 (9th Cir. 2002); Parenteau v. Prescott Unified Sch. Dist., 2009 WL 536668 at *6 (D. Ariz. Mar. 3, 2009). The Ninth Circuit has not addressed the issue of whether there is individual liability for retaliation for opposing acts that violate the ADA.

Defendants argue that to the extent the retaliation claims are asserted against the individual defendants, they must be dismissed because there is no individual liability under the ADA, or under § 504, which incorporates by reference the anti-retaliation

provision of the ADA.

In opposition, plaintiff asserts that there is individual liability for claims of retaliation under the ADA and § 504. Plaintiff notes that the Ninth Circuit has not yet addressed the question, but argues that the court should adopt the reasoning of the Eleventh Circuit in Shotz v. City of Pleasanton, Fla., 344 F.3d 1161 (11th Cir. 2003).

The motion is DENIED. For the reasons that follow, this court is persuaded by the Eleventh Circuit's exhaustive analysis. Under the ADA's anti-retaliation provision, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ." 42 U.S.C. § 12203(a). Unlike other provisions of the ADA, this anti-retaliation provision extends liability for retaliation to any "person," which is defined elsewhere in the statute to "include one or more individuals." See 42 U.S.C. § 12111(7) (referring to definition of "person" in 42 U.S.C. § 2000e(a)).

In Shotz, the court held that individual defendants may be held personally liable under the ADA's anti-retaliation provision where the underlying conduct was made unlawful by ADA provisions concerning public services (ADA Subchapter II), see id., 344 F.3d at 1186, which is the claim asserted here. The court examined the text and plain meaning of the provision, and its legislative history and purpose. See id. at 1169-77. The court began by recognizing that the language of § 12203(a), forbidding retaliation by "persons," imposed a duty on individuals "to refrain from such conduct." Id. at 1168. The court reasoned that the fact that the statute "imposes such a duty on a class of actors does not compel the further conclusion that individual members of that class are amenable to private suit or otherwise liable for a breach of that duty." Id.

To determine whether individuals were liable for retaliation, the Shotz court turned to the applicable enforcement provision of ADA Title II, incorporating the remedies of Title VI of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e-5(f)-(k). See Barnes v. Gorman, 536 U.S. 181, 184-85 (2002). Title VI provides that no person shall be excluded from participation or subjected to discrimination by any program or activity receiving federal

10

United States District Court
Northern District of California

1   funds.  42 U.S.C. §§ 2000d.  Although the statute contains no private right of action, one

2   has been implied that allows for compensatory damages and injunctive relief.  Barnes,

3   536 U.S. at 185-87.  Because Title VI is an exercise of the Congress's Spending Power,

4   courts have interpreted Title VI to impose liability only upon those who actually receive

5   federal funds for the program or activity at issue and have, therefore, held that individuals

6   are ordinarily not liable under the statute.  See Shotz, 344 F.3d at 1169-70.

7          Shotz found that, because Title VI did not reach individuals unless they could be

8   held to be recipients of federal funds, there was a conflict between the broad language of

9   § 12203(a) imposing liability upon all "persons" and the applicable enforcement

10  provisions of § 12203(c) that incorporated Title VI's remedies.  Shotz described the

11  conflict as follows:  "Did Congress intend the rights-and duty-creating language in the

12  ADA anti-retaliation provision to, itself, countenance liability against individuals for its

13  violation, or did Congress intend the remedies available for Title VI violations to control

14  exclusively the type of relief available as well as the appropriate scope of liability?"  Id. at

15  1171.

16         The court expressed concern that if the remedies of Title VI governed the scope of

17  liability for retaliation involving public services under the ADA, the result might deviate

18  considerably from the ADA's intent and purpose.  Unlike Title VI, the ADA was not

19  enacted under the spending power and was intended to reach all "public entities,"

20  regardless of whether they received federal funds.  The court also noted that limiting the

21  ADA's retaliation provision to only recipients of federal funds might make it duplicative of

22  the Rehabilitation Act, 29 U.S.C. § 794, which similarly prohibits disability discrimination

23  by entities receiving federal funding.  Id. at 1174.

24         After considering both the text and the legislative history of the ADA, the Shotz

25  court concluded that "[b]ecause neither the plain language, nor the statutory structure,

26  legislative history, and purpose are helpful," § 12203 is "inscrutable" and "Congress's

27  intent cryptic and imprecise."  Id. at 1177.  Thus, the court turned to the interpretation of

28  § 12203 by the Department of Justice ("DOJ"), giving due deference to that interpretation

1   under <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-43

2   (1984).

3       The court determined that the DOJ's construction of § 12203 – that "individuals

4   acting in their individual capacities [are] amenable to private suit" – survived the

5   appropriate threshold of judicial scrutiny and was also a reasonable interpretation of the

6   statute.  <u>Schotz</u>, 344 F.3d at 1178-80 (citing 28 C.F.R. § 35.134, which is found within

7   "Nondiscrimination on the Basis of Disability in State and Local Government," 28 C.F.R.

8   Part 35; also citing 56 Fed. Reg. 35,696, 35,707 (July 26, 1991) ("Preamble to

9   Regulations on Nondiscrimination on the Basis of Disability in State and Local

10  Government Services," "Section-by-Section Analysis.")).

11      The court noted that "[t]he text of § 12203 sets out both rights- and duty-creating

12  language," and observed that "we cannot say that Congress intended to preclude

13  individual liability based on the remedies available under Title VI." <u>Id.</u> at 1179.  The court

14  concluded that "we must defer to the regulations."  <u>Id.</u>   Accordingly, the court held that

15  "an individual may be sued privately in his or her personal capacity for violating § 12203

16  in the public services context."  <u>Id.</u> at 1180.

17      As the <u>Schotz</u> court explained in some detail, there is a clear conflict between this

18  language and the remedial provision relating to retaliation claims in the public services

19  context, which is derived from Title VI, with the result that the statute is truly "inscrutable."

20  Where no clear meaning can be extracted from the plain language of the statute or the

21  legislative history, it is reasonable for the court to defer to the agency interpretation.  <u>See</u>

22  <u>Chevron</u>, 467 U.S. at 842-43.  "Congress expressly authorized the Attorney General to

23  make rules with the force of law interpreting and implementing the ADA provisions

24  generally applicable to public services."  <u>Schotz</u>, 344 F.3d at 1179 (citing 42 U.S.C.

25  § 12134(a)).  The DOJ issued its rules governing the implementation of these provisions

26  using conventional notice-and-comment rulemaking procedures.  <u>See id.</u>  The <u>Schotz</u>

27  court found the relevant rule interpreting the ADA's anti-retaliation provision to be

28  deserving of deference, and to be reasonable as well.  <u>Id.</u>

The cases cited by defendants are distinguishable because they either involve retaliation in the employment context (Title I) rather than public services context (Title II), or rely on cases in the employment context, thereby conflating claims under the two titles of the ADA. Public services retaliation claims are analyzed differently with respect to individual liability because the remedies available in the public services context differ from those available in the employment context. See Shotz, 344 F.3d at 1165-80; see also Datto v. Harrison, 664 F.Supp. 2d 472, 491-92 (E.D. Pa. 2009) (courts considering ADA retaliation claims in the employment context look to Title VII remedies, whereas courts examining retaliation claims involving public entities look to Title VI).

For example, in Baird v. Rose, 192 F.3d 462 (4th Cir.1999), the Fourth Circuit relied on precedent from employment discrimination disputes that prohibit individual liability for retaliation under the ADA. See id. at 471 (relying on the remedies provided by the ADA "in the employment context" to preclude individual liability in the public services context). The Shotz court criticized this approach for failing to recognize that the public services context is distinct from the employment context. Id., 344 F.3d at 1174.

In Stern v. Calif. State Archives, 982 F.Supp. 690 (E.D. Cal. 1997), the court held that a plaintiff cannot maintain an ADA retaliation claim in the employment context against individual defendants who do not otherwise satisfy the definition of "employer." Id. 692-93. The court distinguished the remedies available, which depended on "whether the alleged retaliation occurred with respect to employment, public services, or public accommodations[,]" and noted that in the employment context, Title VII provided the applicable remedial provision. Id. at 693. Here, as discussed at length in Shotz, it is Title VI that provides the applicable remedial provision.

Alternatively, defendants cite cases in which the courts simply ignore the conflict between the use of the term "person" in § 12203(a) and the remedial provision applicable to claims in the public services context, suggesting that only recipients of federal funds can be liable for retaliation. For example, defendants cite B.K. v. Lake Oswego Sch. Dist., 2012 WL 844222 (D. Or. March 12, 2012), where the court concluded that despite

the use of the term "person" in § 12203(a), a cause of action under the ADA for retaliation in the public services context does not lie against a private individual in his or her personal capacity, because § 12203(c) "simply incorporates the remedies and procedures that would be available under Title II of the ADA in this context." Those remedies are a lawsuit against either a "public entity," or a "head of department, agency, or unit sued in his official capacity," rather than a lawsuit against an individual in his or her personal capacity. B.K., 2012 WL844222 at *2-3 (citations and quotations omitted).

In the absence of Ninth Circuit authority, the court finds that the Shotz analysis provides the most pertinent guidance, at least at this stage of the litigation. The motion to dismiss the ADA and § 504 claims asserted against the individual defendants is DENIED on this ground.

2.    Dismissal of punitive damages claims against entity defendants

The FAC seeks punitive damages in connection with the first (ADA), second (§ 504), fourth (§ 1983 First Amendment free speech and retaliation), fifth (California Constitution free speech), seventh (Educ. Code §§ 44113(a) and 44114(c)), eighth (wrongful termination in violation of public policy), ninth (§ 1983 free speech/prior restraint), and tenth (Bane Act) causes of action. The first, second, fifth, and eighth causes of action are asserted against "all defendants," as is the § 44113(c) portion of the seventh cause of action. The fourth cause of action is asserted against the individual defendants as to damages, and against "all defendants" as to all other relief. The ninth and tenth causes of action are asserted against Van Vleck and the District only.

Defendants argue that punitive damages are not available under Title II of the ADA or § 504 of the Rehabilitation Act (first and second causes of action), and contend that the punitive damages claims asserted against the entity defendants generally should be dismissed because under California Government Code § 818, punitive damages are not available against public entities in California. Accordingly, defendants argue, to the extent plaintiff is seeking punitive damages under the ADA or § 504, or against the public entities generally, those claims (or allegations) should be dismissed.

1    In opposition, plaintiff concedes that punitive damages are not available against

2    the entity defendants under the ADA or § 504, and are also not available under most of

3    the remaining causes of action, but she maintains that punitive damages are available

4    against public entities under Education Code § 44114.

5    Under § 44114(c), "a person who intentionally engages in acts of reprisal,

6    retaliation, threats, coercion or similar acts against a public school employee . . . for

7    having made a protected disclosure shall be liable in an action for damages brought

8    against him or her by the injured party." Cal. Educ. Code § 44114(c). For purposes of

9    this Act, the term "person" includes any individual, state or local government, or agency

10   or instrumentality thereof. Id. § 44114(d). "Punitive damages may be awarded by the

11   court where the acts of the offending party are proven to be malicious." Id. § 44114(c).

12   Government Code § 818 provides, "Notwithstanding any other provision of law, a

13   public entity is not liable for damages awarded under Section 3294 of the Civil Code or

14   other damages imposed primarily for the sake of example and by way of punishing the

15   defendant." Cal. Gov't Code § 818. Plaintiff recognizes that § 818 generally precludes

16   punitive damages against a public entity, but claims that that rule applies only in the

17   absence of a statute that expressly authorizes such damages.

18   The motion is GRANTED as to the claims under the ADA and Rehabilitation Act,

19   based on plaintiff's lack of opposition. As for the Education Code claim, the court

20   disagrees with plaintiff's assertion that the language in § 44114(c), together with the

21   language in § 44112, defining "persons" to include public entities, expresses the

22   Legislature's intent to override the immunity against punitive damages set forth in

23   Government Code § 818. Plaintiff cites no authority for this proposition, and at least one

24   court has held to the contrary. See Elliott v. Amador Cty. Unified Sch. Dist., 2012 WL

25   2798811, at *7 (E.D. Cal. 2012).

26   Section 818 specifically and unambiguously prohibits awarding punitive damages

27   against a public entity – "[n]otwithstanding any other provision of law." The phrase

28   "[n]otwithstanding any other provision of law" means that no other provision of law can be

15

used to impose punitive damages on a public entity. Thus, it is irrelevant that § 44114(c) contains a punitive damages provision or that § 44112 defines "persons" to include public entities. The motion to dismiss is GRANTED on this ground as well.

3. Dismissal of ADA and § 504 claims on ground that plaintiff did not oppose disability discrimination under either Act

Defendants argue that the ADA and § 504 claims must be dismissed because plaintiff did not oppose discrimination under either Act. They contend that plaintiff's complaints to administrators and letters to parents were not in "opposition" to disability discrimination made unlawful under the ADA or § 504, but rather were complaints regarding her own safety and that of her students. Defendants assert further that to the extent plaintiff's theory is that she was retaliated against for advocating that disabled students be placed in a more restrictive environment, she has not stated a claim for retaliation under the ADA and § 504, because arguing for placement in a more restrictive environment cannot be considered opposition to disability discrimination.

In response, plaintiff contends that advocating for students with disabilities on issues related to their educational rights and protesting discrimination against them constitute protected activity under both statutes. She also argues that, contrary to defendants' assertion, her complaints were not limited to "safety" issues. She asserts that while she did complain about safety, she has alleged in detail that she complained numerous times to the ETA (her union), District administrators, Board members, County officials, and the SELPA, consistently making clear her belief that two of her students required greater support and a more restrictive placement and that the District's failure to provide them with an appropriate education was violating their rights and those of her other students with disabilities. She points to numerous instances of advocacy on behalf of the two students with dangerous behavior and the other students with disabilities in her class, including the allegations in FAC ¶¶ 26, 32, 37, 40, 43, 46, 48, 50, 55-56, 60, 61-63.

The motion is DENIED. To establish a prima facie claim of retaliation under either the ADA or the Rehabilitation Act, a plaintiff must demonstrate that (1) she engaged in

16

protected activity; (2) she suffered a materially adverse employment action; and (3) there exists a causal connection between the protected activity and the adverse employment action.  Pardi v. Kaiser Found. Hosp., 389 F.3d 840, 849 (9th Cir. 2004).  Defendants' argument here is directed at the first element – whether plaintiff has adequately alleged she engaged in protected activity.

Courts have made clear that advocating for students with disabilities on issues related to their educational rights and protesting discrimination against them constitutes protected activity under both § 504 and the ADA.  See Barker v. Riverside Office of Educ., 584 F.3d 821, 824-28 (9th Cir. 2009); see also Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1132 (10th Cir. 2010); Ray v. Henderson, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000).

Here, the court finds that the FAC adequately alleges – for purposes of the present motion – that plaintiff complained that the District was not complying with its obligations to her students under the ADA and § 504 (and by implication, the IDEA).

4.    Dismissal of Government Code § 11135 claim

In the third cause of action, plaintiff asserts a claim under Government Code § 11135 against "all defendants."  Section 11135, which has been labeled "the California equivalent of the ADA," see C.S. v. Pub. Safety Acad. of San Bernardino, 2014 WL 12591181 at *5 (C.D. Cal. Nov. 26, 2014), and also as "identical to the Rehabilitation Act, except the entity must receive State financial assistance" rather than federal financial assistance, see Y.G. v. Riverside Unfied Sch. Dist., 774 F.Supp. 2d 1055, 1065 n.6 (C.D. Cal. 2011), prohibits all entities that receive financial assistance from the State of California from discriminating on the basis of disability.

Defendants contend that this claim must be dismissed because plaintiff has not alleged that she has a "disability" or that she was "subjected to discrimination" because of that disability, as required by § 11135.  They assert that this claim fails for the further reason that claims under § 11135 require exhaustion of administrative remedies before a civil suit can be brought, and plaintiff has failed to allege facts showing compliance with

17

22 Cal. Code Regs. § 98003.

In opposition, plaintiff argues that because § 11135 is identical to the Rehabilitation Act except that the entity must receive State financial assistance, and because it is also coextensive with the ADA, see Cal. Gov't Code § 11135(b), a public entity that receives state funding necessarily violates § 11135 if it has also violated the ADA or the Rehabilitation Act.

With regard to defendants' assertion that the § 11135 claim fails because plaintiff has not alleged that she has a disability or was subjected to discrimination because of a disability, plaintiff responds that defendants have misconstrued the nature of her claim, which is that she was retaliated against because she opposed discrimination against her students with disabilities.

She asserts that the anti-retaliation provisions of the Rehabilitation Act and the ADA grant standing to non-disabled individuals who are retaliated against for attempting to protect the rights of people with disabilities, and claims that the same is true with respect to § 11135 because the statute provides all the same protections afforded by the Rehabilitation Act and the ADA.

The court finds that the motion must be GRANTED. The problem with plaintiff's argument is that she is alleging retaliation in this case, not discrimination. Section 11135 does not afford litigants a retaliation cause of action for reporting or advocating against discrimination of others, but rather prohibits the denial of benefits and/or discrimination "on the basis . . . of disability . . . ." Plaintiff does not allege that she is disabled, and has cited no authority indicating that the retaliation provision applicable to claims under the ADA or Rehabilitation Act applies to transform § 11135 into an anti-retaliation statute. Nor has she suggested any way in which this claim could be amended to state a claim under § 11135. The court thus finds it unnecessary to address the exhaustion issue.

     5.     Dismissal of § 1983 claims against District and individual defendants in their official capacities

Defendants seek dismissal of the fourth and ninth (§ 1983) causes of action

1   against the District and the individual defendants in their official capacities.  Defendants

2   contend that these claims must be dismissed because the District and the individual

3   defendants acting in their official capacities are not "persons" under § 1983.

4       Plaintiff concedes that she cannot assert claims for damages under § 1983 against

5   the entity defendants or the individual defendants in their official capacities.  She asserts

6   that she seeks only prospective injunctive relief against the entity defendants and the

7   individual defendants in their official capacities, and that she seeks damages only against

8   the individual defendants in their individual capacities.

9       The motion to dismiss the § 1983 damages claims against the District and the

10  individual defendants in their official capacities (fourth and ninth causes of action) is

11  GRANTED.  Section 1983 does not apply to states – irrespective of the 11th Amendment.

12  See Will v. Mich. Dept. of State Police, 491 U.S. 58, 66-71 (1989).  Further, "a suit

13  against a state official in his or her official capacity is not a suit against the official but

14  rather is a suit against the official's office."  Id. at 71.

15      In California, a school district is a "state agency."  See Belanger v. Madera Unified

16  Sch. Dist., 963 F.2d 248, 251 (9th Cir. 1992); see also Sato v. Orange Cnty. Dep't of

17  Educ., 861 F.3d 923, 934 (9th Cir. 2017).  Thus, neither school districts nor school district

18  employees sued in their official capacity are "persons" within the meaning of § 1983, and

19  for that reason are not subject to liability for damages.  See, e.g., Chadam v. Palo Alto

20  Unified Sch. Dist., 2014 WL 325323 at *3 (N.D. Cal. Jan. 29, 2014).

21          6.   Dismissal of § 1983 retaliation claim to the extent predicated on violations

22              of ADA and § 504

23      In the fourth cause of action, plaintiff asserts a § 1983 First Amendment retaliation

24  claim against the individual defendants as to damages and against "all defendants" as to

25  "all other relief."  Defendants assert that the alleged protected speech identified by

26  plaintiff in the FAC is confined to two subjects – "safety in the workplace," and "disability

27  discrimination."  They argue that to the extent this cause of action is premised on

28  retaliation for plaintiff's alleged opposition to disability discrimination – i.e., discrimination

19

against her special education students – it should be dismissed. Defendants argue that while this claim is framed as a First Amendment retaliation claim, it appears to be predicated on alleged violations of the ADA and § 504, which is not permissible.

In opposition, plaintiff contends that defendants' argument – that the claim should be dismissed to the extent it is premised on retaliation for opposing disability discrimination – misconstrues the nature of her claim, in which she is asserting her independent right to free speech and association under the First Amendment.

The motion is DENIED. Plaintiff concedes that a § 1983 claim cannot be predicated on violations of the ADA or § 504. See Vinson v. Thomas, 288 F.3d 1145, 1155-56 (9th Cir. 2002) (holding that because Congress provided a comprehensive remedial scheme for individual suits under both Title II and the Rehabilitation Act, a plaintiff cannot enforce Title II rights through § 1983). However, plaintiff's fourth cause of action alleges a constitutional violation that is "independent" of the ADA and § 504 – a claim under the First Amendment that she was retaliated against for speaking out on matters of public concern. The fact that the FAC identifies these matters of public interest as the safety of teachers and students, and disability discrimination, see FAC ¶ 118, does not necessarily mean that she is seeking to assert a claim under § 504 and Title II under the guise of § 1983.

The Ninth Circuit's decision in Stilwell v. City of Williams, 831 F.3d 1234 (9th Cir. 2016) provides guidance. In that case, the court held that the retaliation provision of the Age Discrimination in Employment Act did not preclude the plaintiff city employee's § 1983 claim of retaliation under the First Amendment based on allegations that he was terminated for planning to testify against his employer in a lawsuit relating to age discrimination. The court found that in comparison with the First Amendment, the ADEA's retaliation provision provided less protection to victims of retaliation, did not allow for suit against individuals, required plaintiffs to bear a heavier burden of proof, and excluded certain remedies. Id. at 1246-48. The court concluded that "if there are differences in the protections offered by the statute as compared to those provided by the

Constitution . . . we will not hold § 1983 suits to be precluded unless Congress manifested an intent to preclude." Id. at 1248 (citing Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 259 n.2 (2009)).

7.    Dismissal of § 1983 First Amendment retaliation claim

In the fourth cause of action, plaintiff asserts a First Amendment retaliation claim against "all defendants," alleging that defendants retaliated against her, including by terminating her employment, for engaging in protected speech regarding matters of public concern.

To state a First Amendment retaliation claim against a public employer, an employee must show that (1) he/she engaged in constitutionally protected speech; (2) the employer took "'adverse employment action" against the employee; and (3) the employee's speech was a "substantial or motivating factor for the adverse action." See Lakeside-Scott v. Multnomah Cnty, 556 F.3d 797, 803 (9th Cir. 2009) (citations and quotations omitted). The Ninth Circuit has established a five-part test for analyzing whether a public employee's speech is protected. The court asks

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

Dahlia v. Rodriguez, 735 F.3d 1060, 1067 (9th Cir. 2013) (en banc).

Defendants argue that this claim must be dismissed because plaintiff has not alleged facts sufficient to support the elements of the claim. Specifically, defendants claim that the subject communications were not protected speech because plaintiff was speaking solely in her role as a public employee, and that the communications were thus not protected by the First Amendment.

Defendants argue that the facts in this case are similar to those in Coomes v. Edmonds Sch. Dist., 816 F.3d 1255 (9th Cir. 2016). In that case, a teacher raised

1  concerns in emails to District staff and to parents regarding what she believed to be the

2  premature transfer of disabled students into "mainstream" classes. Id. at 1257-59. The

3  emails addressed purported "illegal and improper treatment of vulnerable students in the

4  public school system" and "bullying and harassment by Meadowdale administrators in

5  retaliation for taking a stand." Id. at 1262. The district court granted the defendants'

6  motion for summary judgment on the ground that the communications were not protected

7  speech, and that ruling was affirmed by the Ninth Circuit. Id. at 1265.

8         The Ninth Circuit concluded that the emails to District personnel were not

9  protected speech because they were raised up the teacher's "chain of command." Id. at

10 1262-64.  As for the communications to the parents, the Ninth Circuit held that, although

11 clearly outside of her chain of command, communicating with parents about students' IEP

12 and their progress in the EBD program was part of her job. Id. at 1264 (citing Lane v.

13 Franks, 134 S.Ct. 2369, 2379 (2014); Garcetti v. Ceballos, 547 U.S. 410, 421-24 (2006)).

14        Here, defendants assert, neither the letter to the parents nor the other

15 communications with administrators constitute protected speech because the subject

16 matters discussed were related directly to plaintiff's job duties as a teacher, and owe their

17 existence to her position as a teacher.  Moreover, defendants contend, the fact that

18 plaintiff in her letter to the parents advised them to call the District if they had any

19 questions or comments simply underscores the conclusion that it was not protected

20 speech, because plaintiff wrote the letter in her capacity as a teacher at Grant

21 Elementary.  Accordingly, defendants argue, plaintiff has failed to state a plausible claim

22 for First Amendment retaliation as a matter of law, and the fourth cause of action should

23 be dismissed.

24        In opposition, plaintiff asserts that she has adequately alleged a cause of action for

25 retaliation for her exercise of free speech rights.  She notes defendants have focused

26 solely on the second element of this test – whether the speech at issue was undertaken

27 as a private citizen or public employee – and argues that this is a fact-specific inquiry and

28 that it is therefore rarely, if ever, appropriate to grant a motion to dismiss on this basis.

United States District Court
Northern District of California

She asserts that she has alleged that she voiced her concerns to numerous individuals outside of her chain of command – including not only parents, but also the Director of the SELPA, the County Coordinator for the BTSA program, the Board, and her union – and that her complaints spanned an entire academic year and encompassed special education violations, discrimination, and safety issues. She argues that the fact that some communications with her supervisors regarding some special education issues might have been within the scope of her job duties does not mean that all her communications, particularly to individuals and entities outside the District, are unprotected.

The motion is DENIED. The court finds that this issue is not appropriate for decision in a 12(b)(6) motion. For example, it is difficult to determine, without a fully-developed record, what constituted plaintiff's "job duties" and thus, whether the communications plaintiff made were or were not within the scope of her job duties. In addition, questions remain about the content and message of plaintiff's communications, and who was aware of them, and whether they were a factor in her termination. It is true that she was a public employee, but it is not necessarily true that every communication she made during the course of her employment by the District should be considered a protected communication related to her job duties. The parties may revisit this issue in the event they seek summary judgment.

8. Dismissal of § 1983 claims against individual defendants on basis of qualified immunity

Defendants contend that the § 1983 claims asserted against the individual defendants must be dismissed on grounds of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In determining whether the defense of qualified immunity applies, the court must determine, first, whether the

1   plaintiff has alleged or shown a violation of a constitutional right, and second, whether the

2   right at issue was clearly established at the time of defendant's alleged misconduct.

3   Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201–02 (2001)). Those

4   steps may be analyzed in any order. Id. at 236.

5          Defendants argue that qualified immunity applies to the individual defendants

6   because (in their view) plaintiff's communications to the District administrators and

7   parents were not protected communications under the First Amendment. And, they add,

8   even assuming that plaintiff has stated a claim based on an individual defendant's

9   violation of her First Amendment rights (which they dispute), there is no clearly-

10  established authority that would have put the individual defendants on notice that any of

11  plaintiff's alleged communications constituted protected speech. Accordingly, they argue,

12  plaintiff's fourth cause of action for violation of § 1983 should be dismissed on the basis

13  of qualified immunity as to the individual defendants.

14         In opposition, plaintiff argues that the individual defendants have not established

15  that they are entitled to qualified immunity. As a preliminary matter, she asserts that

16  qualified immunity does not affect her claims for injunctive relief, and thus, that the

17  individual defendants "should not be dismissed." Second, she contends that defendants

18  who choose to raise qualified immunity prior to filing an answer must accept that the court

19  is required, in ruling on a 12(b)(6) motion to dismiss, to accept the complaint's allegations

20  as true.

21         Next, she argues that in the Ninth Circuit, where a plaintiff is a government

22  employee claiming violations of her First Amendment speech rights, the question of

23  qualified immunity turns on (1) whether the plaintiff's speech involved a matter of public

24  concern, and (2) whether the interests served by allowing the plaintiff to express

25  himself/herself outweighed the state's interest in promoting workplace efficiency and

26  avoiding workplace disruption. See Settlegoode v. Portland Public Schs, 371 F.3d 503,

27  513. Here, she asserts, there are no allegations in the complaint that could support the

28  conclusion that defendants' interest in promoting workplace efficiency and avoiding

workplace disruption ("a fact-based inquiry") outweighs her free speech rights.

The motion is DENIED. Qualified immunity is an affirmative defense to liability for damages. See Crawford-El v. Britton, 523 U.S. 574, 587 (1998); Am. Fire, Theft & Collision Mgrs, Inc. v. Gillespie, 932 F.2d 816, 818 (9th Cir. 1991). An affirmative defense may be upheld on a 12(b)(6) motion only when it is established on the face of the complaint. See Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 902 (9th Cir. 2013); see also Jones v. Block, 549 U.S. 199, 215 (2007). Where a defendant asserts qualified immunity in a 12(b)(6) motion, dismissal is not appropriate unless the court can determine, based on the complaint itself, that qualified immunity applies. O'Brien v. Welty, 818 F.3d 920, 936 (9th Cir. 2016); Groten v. Calif., 251 F.3d 844, 851 (9th Cir. 2001).

Plaintiff is correct that when a defendant seeks dismissal of federal constitutional claims based on a defense of qualified immunity under Rule 12(b)(6), the court must accept all allegations of material fact as true – within the limits established by the U.S. Supreme Court in Iqbal and Twombly. Where government officials are sued in their individual capacities for civil damages, the court must begin "by taking note of the elements a plaintiff must plead to state a claim . . . against officials entitled to assert the defense of qualified immunity. Iqbal, 556 U.S. at 675. Government officials are entitled to qualified immunity unless the plaintiff can allege facts showing the violation of a "clearly established" constitutional right. See Pearson, 555 U.S. at 232.

In this case, however, the two § 1983 First Amendment causes of action raise disputed issues of fact which cannot be resolved in a Rule 12(b)(6) motion. Indeed, the Ninth Circuit has recognized that in the context of the First Amendment, "[w]hether a public employee's speech is constitutionally protected turns on a context-intensive, case-by-case balancing analysis, and thus, the law regarding such claims will rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity." Dible v. City of Chandler, 515 F.3d 918, 930 (9th Cir. 2008).

In the present case, it is also difficult to tell which part of the § 1983 claims

1   defendants are arguing provides them with qualified immunity – or whether it is just as to

2   the § 1983 claims generally.  Given the existence of disputed facts with regard to the

3   § 1983 claim(s), the court finds that a decision regarding qualified immunity is not

4   appropriate at this stage of the litigation.  Defendants may again move for qualified

5   immunity if they file a motion for summary judgment.

6          9.     Dismissal of claims for injunctive relief

7        In the Prayer for Relief, plaintiff seeks injunctive relief requiring defendants to

8   "reinstate [her] to her position as an employee of the District, with full seniority rights and

9   benefits[.]"  In addition, plaintiff alleges entitlement to "declaratory and injunctive relief" in

10  the third cause of action under § 11135, and entitlement to "reinstatement" in the sixth

11  cause of action under Labor Code § 1102.5.  However, she does not request injunctive

12  relief as to any other specific cause of action.

13       Defendants argue that the claims for injunctive relief should be dismissed because

14  there is no substantial likelihood that plaintiff will be wronged in a similar way in the

15  future.  In order to seek injunctive relief, a plaintiff must demonstrate "a sufficient

16  likelihood that he will again be wronged in a similar way."  Fortyune v. Am. Multi-Cinema,

17  Inc., 364 F.3d 1075, 1081 (9th Cir. 2004) (quotation and citation omitted).  Defendants

18  contend that because plaintiff alleges no facts indicating an immediate threat of repeated

19  injury, her claims for injunctive relief should be dismissed or stricken.

20       In opposition, plaintiff asserts that her requests for injunctive relief are proper.  She

21  contends that in arguing that there is no likelihood she will be harmed in the future,

22  defendants have ignored the fact that she is seeking reinstatement to her job.  She

23  argues that reinstatement is a legitimate request for prospective injunctive relief.  She

24  contends that her request for reinstatement is in no way contingent on future unlawful

25  conduct by defendants, but is being sought as a remedy for past unlawful actions.

26       The motion is DENIED.  Injunctive relief is a remedy, not a claim for relief.  See,

27  e.g., Lane v. Vitek Real Estate Indus. Group, 713 F.Supp. 2d  1092, 1104 (E.D. Cal.

28  2010).  As a potential remedy, not a stand-alone claim, it is not subject to dismissal

under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." It is also not an appropriate target for a Rule 12(f) motion to strike, as it is not an "insufficient defense" or "redundant, immaterial, impertinent, or scandalous matter." Whether plaintiff ultimately qualifies for the remedy of injunctive relief will depend on the final outcome of her suit.

10. Dismissal of free speech claim under California Constitution

In the fifth cause of action, plaintiff asserts the free speech claim under the California Constitution against "all defendants." Defendants argue that this claim should be dismissed because the cited section (Art. 1, Sec. 2(a)) does not confer a private right of action for damages. See Degrassi v. Cook, 29 Cal. 4th 333, 336 (2002).

In opposition, plaintiff asserts that while Degrassi held that there is no private cause of action for damages under Art. 1, Sec. 2(a), it also held that a plaintiff may seek declaratory and injunctive relief under that provision. Thus, she argues, she has a valid claim for prospective injunctive relief under this provision of the California Constitution.

The motion is DENIED. Plaintiff did not specifically allege in the fifth cause of action that she is seeking injunctive relief. The only relief she mentions is punitive damages, which would not be available, per Degrassi. Plaintiff may proceed with the claim under Art. 1, Sec. 2(a), but may seek only injunctive relief.

11. Dismissal of claim of wrongful termination in violation of public policy

In the eighth cause of action, plaintiff asserts a claim of wrongful termination in violation of public policy against "all defendants." Defendants assert that this claim must be dismissed because it cannot be maintained against public entities. They also contend that only an employer can be liable for the tort of wrongful discharge in violation of public policy. An individual supervisor cannot be sued for wrongful discharge in violation of public policy. Plaintiff does not oppose the motion to dismiss this cause of action. Thus, the motion to dismiss the eighth cause of action is GRANTED.

12. Dismissal of Bane Act claim

In the tenth cause of action, plaintiff asserts a claim under the Bane Act, Cal. Civ.

Code § 52.1, against defendants Eureka City Schools and Van Vleck. She alleges that "[a]s set forth" elsewhere in the FAC, "in response to [plaintiff's] May 24th complaints, [d]efendant Van Vleck interfered by threat, intimidation, or coercion, or attempted to interfere with threat, intimidation or coercion with [plaintiff's] exercise of her rights under the United States and California constitutions and federal and state laws." FAC ¶ 178.

The Bane Act prohibits interference or attempted interference with "the exercise or enjoyment by any individual . . . of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California," by "threat, intimidation, or coercion." Cal. Civ. Code § 52.1(a). Liability under section 52.1 "requires an attempted or completed act of interference with a legal right, accompanied by a form of coercion." Jones v. Kmart Corp., 17 Cal. 4th 329, 334 (1998).

The Act makes clear that "[s]peech alone is not sufficient to support an action . . . , except upon a showing that the speech itself threatens violence against a specific person . . . ; and the person . . . against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat." Cal. Civ. Code § 52.1(j).

Defendants contend that this cause of action must be dismissed because plaintiff has not alleged facts sufficient to support the elements of the claim. They assert that Van Vleck's cautionary advice that, "If this gets out to the media, it's going to be very bad for your career," FAC ¶ 71, in no way involves a threat of violence. Nor, they argue, does plaintiff allege any facts indicating that such threat of violence was made, so that she could amend her complaint to properly assert a claim under the Bane Act. Accordingly, defendants contend, the motion to dismiss the tenth cause of action for violation of the Bane Act should be dismissed without leave to amend.

In opposition, plaintiff contends that this cause of action states a viable claim under the Bane Act. She asserts that her claim is not based solely on speech, and that defendants' overly narrow reading ignores the context in which Van Vleck's threat was

made. However, she does not directly address defendants' argument that where the "threat, intimidation, or coercion" is based upon a defendant's statements, there must also be an allegation of a specific threat of violence.

Plaintiff points to allegations that Van Vleck had previously attempted to suppress the efforts by the ETA to raise plaintiff's concerns with the District, which caused her to temper her communications with the District for fear of retaliation, FAC ¶¶ 33, 35; that Van Vleck told the CTA representative that he intended to discipline plaintiff when he learned about her letter to parents and other complaints on May 24, 2016, FAC ¶ 66, and made good on that promise; that she was removed from her job in the classroom, placed on administrative leave, prohibited from contacting any parents, students, or school personnel, and subsequently non-reelected, FAC ¶¶ 67, 70; and that Van Vleck made the comment about the news "get[ting] out to the media" at the very meeting where he rescinded her contract for the next school year, FAC ¶ 71.

Plaintiff argues that this "course of conduct" demonstrates Van Vleck's ability to make good on his verbal "threat" to harm her career, making it coercive and intimidating. She asserts that because this conduct, combined with Van Vleck's threat, provides the basis for her Bane Act claim, she is not required to satisfy the pleading requirements that would apply were her claim based on speech alone.

The motion is GRANTED. Plaintiff has not alleged facts sufficient to support the elements of the claim – in particular, the "threat of violence" requirement. Plaintiff has alleged no violence or threat of violence as part of the alleged coercion. See Wagda v. Town of Danville, 2017 WL 2311294, at *10-12 (N.D. Cal. 2017) (dismissing Bane Act Claim without leave to amend because no allegation of threatened violence); Martin v. Cnty. of San Diego, 650 F. Supp. 2d 1094, 1108 (S.D. Cal. 2009) (holding § 52.1(j) "explicitly provides that violence is a required element where the 'threat, intimidation or coercion' is based purely upon a defendant's statements").

At most, Van Vleck's comment might be interpreted as a form of economic coercion, but threats of economic coercion do not constitute violence or a threat of

violence. See Lil' Man in the Boat v. City & Cnty. of S.F., 2017 WL 3129913 at *10-11

(N.D. Cal. July 24, 2017); Gottschalk v. City & Cnty. of S.F., 964 F.Supp. 2d 1147, 1164

(N.D. Cal. 2013).

>    13.    Dismissal of state-law claims against Alexander

Defendants argue that all state law claims asserted against Alexander must be

dismissed because the FAC, in which Alexander is named as a defendant for the first

time, was filed on May 5, 2017, which was more than six months after the District issued

its letter denying plaintiff's California Tort Claims Act ("CTCA") claim (September 14,

2016), and thus, such claims against Alexander are time-barred under California

Government Code § 945.6.

Section 945.6(a) requires that an action on a rejected claim must be filed within six

months after the notice of rejection of the claim "is personally delivered or deposited in

the mail." Cal. Gov't. Code § 945.6(a); Smith v. City and Cty. of S.F., 68 Cal. App. 3d 227

(1977). Further, the CTCA requires that a plaintiff allege facts demonstrating either

compliance with the CTCA requirement or an excuse for noncompliance as an essential

element of a state law cause of action. See D.K. by and through his conservator, G.M. v.

Solano Cnty. Office of Educ., 667 F.Supp. 2d 1184, 1194 (E.D. Cal. 2009); State of Calif.

v. Superior Court (Bodde), 32 Cal. 4th 1234, 1243-44 (2004).

Here, defendants assert, plaintiff mailed and emailed her Government Tort Claim

on July 28, 2016. Notice of rejection of the claim was sent to plaintiff on September 14,

2016. Plaintiff filed her initial complaint on March 10, 2016, within six months after her

claim was rejected, but did not allege a claim against Alexander at that time. Plaintiff filed

the FAC on May 5, 2017, after the expiration of the six-month limitations period as to

Alexander. Thus, defendants contend, the claims against Alexander are time-barred.

In opposition, plaintiff argues that her claims against Alexander are timely. She

notes that defendants do not dispute that plaintiff filed a CTCA claim and also filed a

timely complaint in state court, but that their argument is that the claims against

Alexander are untimely because she was not named as a defendant until the FAC was

filed, approximately 55 days after the initial complaint was filed.

Plaintiff asserts that the primary function of the CTCA is to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim and where appropriate, avoid litigation by settling meritorious claims. She argues that courts should not apply limitations periods in an "overly rigid, technical" manner where the underlying purposes are not furthered; and that the doctrine of "substantial compliance" requires no more than that the governmental entity be apprised of the claim, have an opportunity to investigate and settle it and incur no prejudice as a result of plaintiff's failure to strictly comply with the claims act.

Here, plaintiff contends, she "substantially complied" with the statute, as she filed the initial complaint within the six-month period, and her initial CTCA claim asserted that litigation would be brought against the District and "all appropriate District officials," which she claims constitutes a specific reference to Alexander's role in the underlying events.

The motion is GRANTED. Plaintiff does not dispute that Alexander was not named in any complaint filed in this action until after the six-month limitations period in Gov't Code § 945.6(a) had expired. Her argument – that the limitations period should be extended because she impliedly alluded to Alexander in the government claim by referring to "all appropriate District officials" – is without merit.

Even assuming that such a reference was sufficient to put defendants on notice that a tort claim was being made against Alexander, plaintiff has cited no authority for the proposition that this excused her failure to file suit against Alexander within the six-month limitation period. The six-month period set forth in § 945.6(a)(1) is "mandatory" and "strict compliance is required." See, e.g., Hahn v. City of Carlsbad, 2016 WL 3211802 at *4 (S.D. Cal. Apr. 12, 2016).

Plaintiff added Alexander as a defendant only when she filed the FAC, which was well past the six-month limitation period. Based on all the allegations in the FAC, she was clearly aware of Alexander's role – if any – in the events that form the basis of her claims, and she was therefore required to file any state-law claims against Alexander

within six months of receiving the denial of the CTCA claim.

Plaintiff cites four cases in support of her argument that she should be permitted to add a previously unnamed defendant after the CTCA's deadline for filing a complaint where she has otherwise "substantially complied" with the Act. None of these cases supports her position.

In <u>Carlino v. L.A. Cnty. Flood Control Dist.</u>, 10 Cal. App. 4th 1526, 1533-35 (1992), the court allowed a plaintiff to amend the complaint to substitute a named defendant for a "Doe" defendant, because the plaintiff had timely filed the CTCA claim with the public entity, and was ignorant of the true name of the "Doe" defendant when she filed the original complaint. Plaintiff's original complaint in this case included no "Doe" defendants.

In <u>Addison v. State of Cal.</u>, 21 Cal. 3d 313, 317 (1978), the plaintiff filed suit in federal court, asserting claims under both federal and state law, and after the court dismissed the federal causes of action and declined to exercise jurisdiction over the state-law causes of action, the plaintiff filed another suit in state court. The second suit was filed more than six months after the CTCA claim had been denied. The defendants argued that the state-court action was time-barred, but the court applied equitable estoppel to toll the running of the limitation period. Here, by contrast, there are no facts alleged showing any basis for the application of equitable estoppel.

In <u>Elias v. San Bernardino Cnty. Flood Dist.</u>, 68 Cal. App. 3d 70, 75-77 (1977), the plaintiff filed suit against one county entity but inadvertently failed to file suit with the other; the court allowed the case to proceed because the government entity had been advised of the claim and had had an opportunity to investigate and settle it. Here, it is not a matter of inadvertently failing to name a particular entity defendant, but rather of failing to name an individual defendant whose identity plaintiff was clearly aware of.

In <u>Scruggs v. Haynes</u>, 252 Cal. App. 2d 256, 268-69 (1967), the plaintiff filed a CTCA claim for assault and battery with the City of Long Beach, but named only two police officers in the claim. Later, the plaintiff filed suit against the City and the police

officers. The court held that plaintiff had satisfied the CTCA requirement as to the City because the claim included "all the information required." Here, the issue is not whether plaintiff satisfied the CTCA requirement, but whether she filed suit against a particular defendant within the time permitted.

**CONCLUSION**

In accordance with the foregoing, defendants' motion to dismiss is GRANTED in part and DENIED in part, as follows.

The motion to dismiss the ADA and § 504 retaliation claims (first and second causes of action) as to the individual defendants is DENIED.

The motion to dismiss the ADA and § 504 retaliation claims on the ground that plaintiff did not oppose disability discrimination under either of those Acts is DENIED.

The motion to dismiss the third (Gov't Code § 11135) cause of action is GRANTED. The dismissal is with prejudice.

The motion to dismiss the § 1983 claims (fourth and ninth causes of action) for damages against the entity defendants and the individual defendants in their official capacities is GRANTED. The dismissal is with prejudice.

The motion to dismiss the § 1983 retaliation claim (fourth cause of action) to the extent it is predicated on violations of the ADA and Rehabilitation Act is GRANTED. The dismissal is with prejudice.

The motion to dismiss what remains of the § 1983 retaliation claim (fourth cause of action) because plaintiff does not allege any protected communications is DENIED.

The motion to dismiss the § 1983 claims (fourth and ninth causes of action) as to the individual defendants, based on qualified immunity, is DENIED.

The motion to dismiss the fifth cause of action (denial of free speech under the California Constitution) is GRANTED to the extent it can be interpreted as seeking damages, but DENIED, to the extent it can be interpreted as seeking injunctive relief.

The motion to dismiss the eighth cause of action (wrongful termination in violation of public policy) is GRANTED. The dismissal is with prejudice.

1    The motion to dismiss the tenth (Bane Act) cause of action is GRANTED.  The

2  dismissal is with prejudice.

3    The motion to dismiss the state-law claims asserted against Alexander as time-

4  barred is GRANTED.  The dismissal is with prejudice.

5    The motion to dismiss the claims for punitive damages under the ADA and

6  Rehabilitation Act is GRANTED, based on lack of opposition from plaintiff.  The motion to

7  dismiss the claims for punitive damages as to the entity defendants generally is

8  GRANTED, in light of the prohibition in Government Code § 818 against imposing

9  punitive damages on public entities.

10    The motion to dismiss the claims for injunctive relief is DENIED, as injunctive relief

11  is a remedy, not a cause of action.

12    Defendants shall answer the claims of the FAC left intact by this order within the

13  time permitted under Federal Rule of Civil Procedure 12.

14

15  **IT IS SO ORDERED.**

16  Dated:  September 29, 2017

17  _____

18  PHYLLIS J. HAMILTON
    United States District Judge

19

20

21

22

23

24

25

26

27

28